The common law rule as stated by the majority is that when there is no contrary statutory authority and no contrary agreement between the parties, a mortgagor generally has no right to prepay a mortgage obligation. However, this rule is based on an inaccurate view of the common law and modern investing. Today, both finance and the law recognize the principle of "present value." According to that generally accepted principle, the value of a future stream of payments today, i.e., its present value, is equal to the total of the future stream of payments discounted by an appropriate interest rate. The purpose of interest is to pay the creditor for the lost present use of money. If the creditor receives the money early, then there may be no need for the interest.
The Supreme Court of Pennsylvania changed the common law rule on the presumption of the right to prepay a mortgage obligation in Mahoney v. Furches, 503 Pa. 60, 468 A.2d 458 )1983). The Pennsylvania Supreme Court stated that the common law "presume[d], simply from the absence of a clause so allowing, that a mortgagor could not pay off his debt and alienate his land as he so desired." That Court added: "Instead, we think it wiser to raise a presumption of a right to prepayment of the note where a mortgage is silent as to that right. This presumption could be rebutted by showing a contrary intent mutually manifested by the parties." 503 Pa. at 64-66,468 A.2d at 461. This Court should adopt this modification of the common law.
The majority reverses a judgment allowing prepayment of the loan. It does so in the name of upholding contract obligations. However, the McGowans are not seeking to violate the contract. They are giving to Brannon the full benefit of the credit arrangement provided for in the contract. A mortgage is a substitute for full payment by the purchaser of the price of real property, and it is intended for the benefit of the purchaser. In other words, instead of making payment in full for a piece of property, the seller allows the purchaser to delay the payment into the future. Prepayment by the purchaser means the purchaser voluntarily gives up that benefit. It is certainly not a detriment to the seller for the purchaser to fulfill the obligation of the sale contract earlier *Page 998 
than originally anticipated. Payment in full is more advantageous for both parties.
The majority states that this Court is bound to apply the common law unless it has been abrogated by the legislature and that, even if this Court wished to change the common law, doing so in this case would impair the obligations of the parties. The common law evolved in the courts of England and America as a means of fitting legal principles into the common life of people. It is not an inflexible constitutional provision. Courts alter the common law in order to meet the needs of a changing world. Legal principles remain unchanged; technology, finance, and other things affecting our lives change dramatically. Legal rules are changed to reflect the changed reality without altering principles.
As for the common law rule on prepayment, the history of the rule prohibiting prepayment is not as clear as the majority suggests. Frank S. Alexander, in his historical study of the rule has written:
 "For the past one hundred and fifty years legal scholarship has assumed that a borrower's inability to prepay mortgage indebtedness without the lender's consent was a principle embedded in the common law since its early beginnings. A reexamination of the leading cases and commentaries, however, reveals that this assumption is unjustified. To the contrary, this principle first emerged as a rule of law in the nineteenth century, when major shifts in the economic aspects of residential finance provided the impetus for transformation [in the law.]"
 "The history of mortgage law from the fourteenth through the eighteenth centuries actually suggests that a debtor could redeem property from the mortgage upon payment of the full indebtedness at any time prior to the final due date. . . . Nonetheless, subsequent cases and treatise writers uncritically accepted the holdings in Abbe and Brown [the 1829 and 1845 cases rejecting prepayment] and the concept of perfect tender in time became the rule of law."
Frank S. Alexander, Mortgage Prepayment: The Trial of CommonSense, 72 Cornell L.Rev. 288, 289, 292 (1987).
Another principle that equity courts applied from the 14th through the 18th centuries was the rule of reciprocity. That rule stated that because the mortgagee had the right upon default by the mortgagor to demand immediate and full early payment, then the mortgagor also had the right to make early payment in full in order to extinguish the debt. Howard v.Harris, 23 Eng. Rep. 406 (Ch. 1683); Alexander, at 307. That rule changed in the early 19th century when currency fluctuations made it possible for mortgagors to take advantage of mortgagees by prepayment with devalued dollars. "[T]he maker of a note, who had received the whole amount of it, should not be permitted to pay it off with a depreciated currency." Tillouv. Britton, 9 N.J.L. 120, 137 (1827). In the 19th century, the rule of reciprocity came to be, instead, that because the mortgagee could not demand early payment in full without a default by the mortgagor, then the mortgagor could not voluntarily make early payment.
To say that this Court cannot allow for prepayment of a mortgage is to ignore the purposes and reasons that underlie the common law. Redemption, created as an extra-contractual right of the mortgagor, was originally a creation of equity courts. As for equity's approach to prepayment, "equity courts placed the emphasis on the debt itself; the property merely provided security for payment of the debt. Timing of the debt's payment was of little consequence so long as the debt was paid by the date specified." Alexander, at 341. If Brannon wants to continue to receive a stream of monthly payments as income, modern finance allows her to use the amount received upon prepayment to purchase an annuity. That is the beauty of a modern financial system. It allows for more financial freedom, not less. Yet, the majority follows an outdated rule that would force the McGowans to remain in debt although they have the means and the will to free themselves from that debt. *Page 999 
The common law rule applied in this case has a questionable pedigree. It also cannot be reconciled with modern financial practices. Thus, this Court should conform the law to present-day financial and social realities, as the proper application of the common law requires. Considering today's low interest rate, payment of principal only may not fully compensate Brannon. Brannon and the McGowans could negotiate a payment amount that would equal the present value of the remaining mortgage payments. In such an arrangement, and because there is no clause in the contract prohibiting or requiring prepayment, there would be no impairment of the contract obligation. I agree with the Court of Civil Appeals. I would adopt the rule that in the absence of a contrary contractual intent by the parties, the maker has the right to prepay a promissory note, as pre-19th century common law apparently allowed. Therefore, I must respectfully dissent.
INGRAM, J., concurs.